## AFFIDAVIT OF ELVA CARDENAS

"My name is Elva Cardenas, I am over 18 years of age, and I have direct knowledge of the facts that I am setting forth in this affidavit.

1. "I am a Plaintiff in the instant lawsuit. I am President of Communications Workers of America, Local 6182 (hereinafter "Local 6182"), which is also a Plaintiff in the instant lawsuit. The Communications Workers of America ("CWA") is the parent international union of Local 6182. After certification by the National Labor Relations Board on July 27, 1988 pursuant to a secret ballot election, Advocacy, Inc. recognized CWA and its Local 6182 as the exclusive representative for the purpose of collective bargaining of all non-managerial and non-confidential employees.

2. "Advocacy, Inc. and CWA Local 6182 have been signatories to a consecutive series of collective bargaining agreements covering over 18 years. The current Collective Bargaining Agreement (hereinafter "CBA") was executed on June 22, 2004 and its term runs to at least May 31, 2007. Under Article 37 of the CBA the term of the contract may extend past May 31, 2007 if as of that date the parties are engaged in good faith bargaining and a new agreement has not been reached. Exhibit A hereto is a true and accurate a copy of the CBA, with which I am personally familiar.

3. "In relation to CWA, Local 6182 possesses full and autonomous authority to enforce the CBA. As President of Local 6182, I administer, monitor and enforce the CBA on behalf of the complete bargaining unit from my location in San Antonio, Bexar County, Texas. Currently, the bargaining unit contains approximately 85 employees.

4. "Advocacy Inc. maintains and operates a regional office at 6800 Park Ten Blvd., Suite 208N, San Antonio, Bexar County, Texas, and conducts business in Bexar County, Texas. I am an employee of Advocacy, Inc. at its office in Bexar County, Texas.

5. "On March 5, 2007, Ronald Brown, Chair of the Advocacy, Inc. Board of Directors, informed me in writing that Advocacy Inc. would no longer recognize CWA or Local 6182 as the representative of the employees unless Local 6182 immediately resolved a conflict of interest that Mr. Brown claimed disqualified Local 6182 and CWA from serving as the bargaining agent of Advocacy, Inc. employees. Mr. Brown claimed that the alleged disabling conflict of interest arose from a Texas State Employees Union (hereinafter "TSEU") written flyer pertaining to TSEU's legislative objectives. TSEU is a local of CWA. It is a separate local of CWA from Local 6182. The members and officers of Local 6182 and TSEU are completely separate. TSEU neither has nor has ever attempted to exercise any authority over Local 6182's collective bargaining or legislative objectives, nor is Local 6182 in any respect bound to honor TSEU's legislative objectives. TSEU represents state employees, and as such it has no authority to bargain collectively. Local 6182 represents the employees of a private employer and does have collective bargaining authority and responsibility. Local 6182 has nothing to do with TSEU's legislative program or with representation of TSEU's members, nor does TSEU have anything to do with Local 6182's objectives or with representation of the Advocacy, Inc. bargaining unit. Exhibit B is a true and accurate copy of Mr. Brown's March 5, 2007 letter, with which I am personally familiar.

AFFIDAVIT OF ELVA CARDENAS                                                                                      1

6. "There was nothing Local 6182 could do to resolve the purported conflict of interest. Local 6182 has no authority over TSEU. More importantly, in my opinion Advocacy, Inc. had no right to abolish the union's recognition and cancel the bargaining relationship for the reasons claimed by Mr. Brown. Even if Advocacy, Inc. employees themselves, on their own time and as individuals or union representatives, advocated state legislation that Advocacy, Inc.'s board of directors disagreed with (which, by the way, they have not done), in my opinion that would not give Advocacy, Inc. the right to abolish the collective bargaining agreement and relationship. Much less could dissatisfaction with the legislative program of a separate local of CWA over which Local 6182 has no control, and which in turn has no control over Advocacy, its employees, or their collective bargaining representative, justify cancellation of the agreement and relationship in my opinion.

7. "On March 9, 2007, Mary Faithfull, Executive Director of Advocacy Inc. informed me and all staff in writing that Advocacy Inc. was immediately withdrawing recognition of Local 6182 and was no longer bound by any terms of the CBA. Exhibit C is a true and accurate copy of Ms. Faithfull's March 9, 2007 letter, with which I am personally familiar.

8. "On or about March 10, 2007, Advocacy Inc. began abolishing provisions of the CBA, and either wholly eliminating their subject matter or replacing them with non-negotiated policies and practices.

9. "Article 1 of the CBA commits Advocacy, Inc. to recognition of CWA and its Local 6182 as bargaining agent of the employee bargaining unit. As stated above, Advocacy, Inc. wholly withdrew and abolished its recognition of the union despite this contractual commitment. This harm is not repairable by any future award of money damages.

10. "Article 2, Section 4 of the CBA provides that the agreement can only be added to, detracted from, altered or modified by a document signed in writing on behalf of the parties to the CBA. Article 5, Section 2 of the CBA provides that union stewards may be allowed reasonable time for the investigation and administration of grievances. Article 5, Section 3 of the CBA provides that authorized union representatives shall have reasonable access to the premises to monitor compliance with the agreement. Article 5, Section 4 of the CBA provides that union stewards shall be permitted to transact union business directly related to administration of the agreement on Advocacy, Inc.'s premises and without loss of pay. Article 5, Section 5 of the CBA commits Advocacy, Inc. and the union to negotiate a new collective bargaining agreement through designated representatives when the agreement approaches expiration, without loss of pay for the union representatives while conducting negotiations. Article 5, Section 7 of the CBA provides the union meeting space at Advocacy, Inc.'s locations of business at no charge on non-working time at a time of day designated by the union. Article 5, Section 8 of the CBA provides the union reasonable use of Advocacy, Inc. office equipment during non-working hours for union business. In March 2007 as shown above, Advocacy, Inc. announced its disavowal of all these contractual promises. Advocacy, Inc. has cancelled all these contractual requirements. These harms are not repairable by any future award of money damages.

AFFIDAVIT OF ELVA CARDENAS                                                                                               2

11.     "Article 18 of the CBA provides for payroll deduction of union dues by voluntary employee request. On March 9, 2007, Advocacy, Inc. cancelled and ceased implementing payroll dues deduction.

12.     "Article 18 of the CBA requires Advocacy Inc. to furnish to the union a monthly summary of bargaining unit staff hired or terminated during the month, the date of hire or termination, job classification, and salaries of said employees. Beginning April 1, 2007, and every month thereafter, Advocacy Inc. has refused to provide this monthly list. This harm is not repairable by any future award of money damages.

13.     Article 17 of the CBA contains the negotiated employee wages and salaries, including negotiated salary increases. On June 26, 2007, Advocacy Inc. cancelled the negotiated salary schedule and substituted a non-negotiated salary schedule of its own devising.

14.     Article 22 of the CBA contains provisions regarding Other Health and Pregnancy Related Leave. Under Article 22, Section 3, employees accrue time which they may later use for catastrophic leave in the event of need. This provision requires Advocacy Inc to grant catastrophic leave to qualified employees who make such a request. I am personally familiar with the situation of Ms. Jane Simpson, a bargaining unit employee. Ms. Simpson requested catastrophic leave prior to May 31, 2007 for urgent medical reasons. Ms. Simpson had accrued time for catastrophic leave and was otherwise eligible to use it pursuant to the CBA. Prior to May 31, 2007, Advocacy, Inc. denied Ms. Simpson's request for catastrophic leave and cancelled the catastrophic leave provision of the CBA. Advocacy Inc. subsequently terminated Ms. Simpson's employment. If she had been granted catastrophic leave to which she was entitled under the CBA, Advocacy, Inc. could not have terminated Ms. Simpson's employment.

15.     Article 27, Section 1 of the CBA requires Advocacy, Inc. to make specified contributions to the employees' pension accounts. On July 2, 2007, I learned that this provision of the CBA was cancelled when Advocacy, Inc. informed me that it was now making its contributions on a discretionary basis. Exhibit D hereto is a true and accurate copy of email correspondence between Ms. Judith Alley and myself, with which I am personally familiar.

16.     Advocacy Inc.'s repudiation of the collective bargaining relationship and the CBA has caused irreparable harm to Local 6182 and the bargaining unit employees. The irreparable harm includes the irreplaceable loss of the union's status and legitimacy as the employees' bargaining agent and as a union, irreplaceable destruction of employees' confidence in the collective bargaining process, and irreplaceable destruction of employees' confidence in the ability of Local 6182 to enforce the CBA. The irreparable harm also includes, but is not limited to, the immediate loss of Local 6182's ability to represent the bargaining unit and its members, immediate losses in membership, and an imminent threat to the existence of Local 6182. For example, Local 6182's dues paying membership has declined by 14 employees since Advocacy Inc. withdrew recognition. These harms are not repairable by any future award of money damages. For example, if Local 6182 ceases to exist due to employees' loss of confidence in the collective bargaining process and/or loss of confidence in the ability of Local 6182 to enforce the CBA, I do not see how any kind of eventual remedy many months in the future could repair that damage.

Everything contained in this Affidavit is true and correct according to my personal knowledge.

*[signature]*
Elva Cardenas, Affiant

Before me, the undersigned authority, personally Elva Cardenas, who stated upon her oath that the statements in her above and foregoing affidavit are true and correct.

Subscribed and sworn to me on this 18th day of July 2007.

*[signature]* Mirta Rubalcava
Notary Public in and for the
State of Texas
My commission expires: 1-18-08

*[Notary Seal: MIRTA RUBALCAVA, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 01-18-2008]*

AFFIDAVIT OF ELVA CARDENAS

4